# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| MCDP PHOENIX SERVICES PTE LTD., and MICHAEL A. CARBONARA, | ) ) ) | CIVIL NO. _____ (   ) |
| Plaintiff, | ) ) | ACTION FOR VIOLATIONS OF PUBLIC LAW 91-452, TITLE IX, 84 |
| vs. | ) ) ) | STAT., *codified at* 18 U.S.C. 922, 941 (1970), 18 U.S.C. §§1961-1968 |
| FIRST FINANCE INTERNATIONAL BANK, INC.; MICHEL POIGNANT; SERGEY VLADIMIROVICH SLASTIKHIN; UDI HAIK; DANIEL BERGER: DALTON WAGNER, | ) ) ) ) ) | (CIVIL RICO); AND FOR DAMAGES PURSUANT TO THE PUERTO RICO CIVIL CODE **[JURY TRIAL DEMANDED]** |
| Defendants. | ) ) ) | |

## COMPLAINT

COME NOW Plaintiffs MCDP PHOENIX SERVICES PTE LTD. and MICHAEL A.

CARBONARA, by and through their undersigned counsel, WEINSTEIN-BACAL, MILLER & VEGA,

P.S.C. (Stuart A. Weinstein-Bacal, Peter W. Miller, and Javier Vega Villalba, Of Counsel), and

Professor G. ROBERT BLAKEY, Of Counsel, and for their Complaint against defendants FIRST

FINANCE INTERNATIONAL BANK, INC.; MICHEL POIGNANT; SERGEY

VLADIMIROVICH. SLASTIKHIN; UDI HAIK: DANIEL BERGER; and DALTON WAGNER

very respectfully state, allege, and request as follows.

## I. **INTRODUCTION**.

1. This is an action by Plaintiffs MCDP PHOENIX SERVICES PTE LTD. ("**MCDP**")

and MICHAEL A. CARBONARA to stop a decades-long pattern of unlawful and fraudulent

activity engaged in as a regular way of doing business by the above-captioned defendants that

shows an intent to defraud, manifested by their duration, their similarity, and their persistence

CIVIL NO. _____ (___); *MCDP Phoenix Services PTE LTD., v. First Finance Internatioal Bank, Inc. et al.*
COMPLAINT - RICO
Page 2

(equaling a "regular way of doing business") by them in connection with their conduct of the affairs of a series of unlawful and fraudulent enterprises within 18 U.S.C. § 1961(4). The pattern of racketeering activity includes all of the defendants and their affiliates, subsidiaries, and other confederates. The pattern of racketeering activity continues unabated to this date through the efforts of the Poignant Defendants and the Sergey Defendants, in particular, defendants First Financial International Bank, Inc. ("**FFIBI**"), and the Paytoo defendants described below, abetted from time-to-time by B High House International PTE LTD ("**BHHI**") and defendants Haik, Berger, and Wagner, and others, to defraud a wide range of victims in Puerto Rico, the State of Florida, across the United States, and around the world, that will continue indefinitely if not stopped by this Honorable Court.

2. Plaintiff MCDP seeks to stop the defendants, most of all FFIBI, from continuing their pattern of unlawful and fraudulent racketeering activity using the United States Mail and interstate wires, as their regular way of doing business, acting in concert with one another and others, and, in particular, through the FFIBI Enterprise and the Paytoo Enterprises described below.

3. The defendants' victims – in particular, when acting through the FFIBI Enterprise and the Paytoo Enterprises – range far beyond the Plaintiffs herein, from the American Express Company to the Russian Space Agency, Roscosmos ("**Roscosmos**"), and has, most recently, been abetted in its pattern of racketeering as the "FFIBI Enterprise" described below by BHHI to defraud MCDP and others out of their businesses and properties in connection with the operation of FFIBI, an international financial entity (IFE) operating under the laws of Puerto Rico.

4.   MCDP sued defendants Poignant and FFIBI – whose (FFIBI's) predecessor was Paytoo [an umbrella for numerous companies bearing the "Paytoo" name, identified in FFIBI's website as "PAYTOO CORP. and its group of subsidiaries" (the "**Paytoo Companies**")] – in the United States District Court for the District of Puerto Rico in Civil No. 20-01538 (RAM), *MCDP Phoenix Services PTE LTD. vs. First Finance International Bank, Inc.; Michel Poignant,* in October 2020 (the "**Puerto Rico Case**"), and was only the latest of the defendants' victims to sue dozens of financial entities and compaies owned and operated by Poignant and Sergey, together and separately, over decades.

5.   **Exhibit 1** hereto is a list of the various Paytoo Companies in which defendants Poignant and Sergey have been involved.

6.   **Exhibit 2** hereto is a chart prepared by FFIBI showing the relationship between it and several of the Paytoo Companies.

7.   Defendant Wagner, acting through BHHI and defendants Haik, Berger, and Wagner ("**BHHI's Confederates**"), have abetted various of the activities in the Poignant Defendants' and defendant FFIBI's pattern of racketeering activity for years, as described below, and defendant Sergey and the Sergey Defendants have been conspiring with Poignant and the Poignant Defendants going back to 2005 and the creation and operation of the "Pay Too" companies and the enterprises operated by them, including Paytoo Bank, the predecessor to defendant FFIBI, as discussed below.

8.   All of the defendants conducted and participated, directly or indirectly, in the management and operation of the affairs of their enterprises alleged below, the FFIBI Enterprise and the Paytoo Enterprises, with respect to their many targets (including but not limited to

MCDP, and their many Other Victims) through a pattern of fraudulent activity within 18 U.S.C.

§§ 1961(1), and (5) and § 1962(c), in particular:  multiple, repeated, and continuous violations of

18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (interstate wire fraud).  In the case of MCDP,

defendant FFIBI eschewed the fundamental fiduciary obligations, ethics, and practices of

financial institutions.

9.  The ***facts*** that will be presented to this Honorable Court below will demonstrate

beyond cavil that the defendants – through the FFIBI Enterprise, the Paytoo Enterprises, and

other enterprises – and abetted by BHHI and BHHI's Confederates, including, in particular,

defendants Haik, Berger, and Wagner – have been unlawfully and fraudulently and by economic

coercion, seeking to intimidate MCDP into reducing its claim to funds that it deposited in 2020

in defendant FFIBI, damaging MCDP and Other Victims in their business and property and

harming their good will.

10.  By finding that Poignant's and the Poignant Defendants' – abetted by BHHI and

BHHI's Confederates, including, in particular, Haik, Berger, and Wagner – and Sergey's and the

Sergey Defendants' unlawful and fraudulent acts constitute a "pattern" of "racketeering" and that

the pattern is open-ended and continuous and demonstrates a regular way of doing business by

Poignant and Sergey and the Poignant Defendants and the Sergey Defendants – abetted from time

to time by BHHI and BHHI's Confederates, including, in particular, Haik, Berger, and Wagner –

to this very day, and only by granting injunctive relief against the continuation of their pattern of

racketeering can this Honorable Court interrupt it, bring the pattern to a conclusion, and preserve

the economic viability of Plaintiff MCDP, a company with a record of successful international

business transactions throughout the United States and across the world, protect MCDP and the

CIVIL NO. _____ (___); *MCDP Phoenix Services PTE LTD., v. First Finance Internatioal Bank, Inc. et al.*
COMPLAINT - RICO
Page 5

defendants' Other Victims, and prevent new victims from falling prey to defendants' enterprises.

## II. <u>THE PARTIES AND RELATED ENTITIES.</u>

### A. <u>Plaintiffs MCDP and Carbonara and Related Persons and Entities.</u>

11.  Plaintiff MCDP Phoenix Services PTE LTD. (again, "**MCDP**"), is an exempt private company limited by shares, created and operating pursuant to and under the laws of the Republic of Singapore, with its address at 62 UBI ROAD 1, 03-08 OXLEY BIZHUB 2, Singapore, 408734.

12.  MCDP is in the business of managing and collecting payments for the group of companies to which it belongs; in particular, MCDP processes payment transactions and manages, collects, and recovers payments from customers of its principal affiliates with whom they transact online ("**Payment Processing**" for "**Third-Party Customers**").

13.  MCDP maintains a network of third-party processing agents across the world to facilitate the collection and processing of payments from Third-Party Customers.

14.  Plaintiff MICHAEL A. CARBONARA ("**Carbonara**") is the president of MCDP and a resident of the State of Florida

### B. <u>The Poignant Defendants; Sergey Defendants; Related Persons and Entities.</u>

#### 1. <u>Defendant Michel Poignant</u>.

15.  Defendant MICHEL POIGNANT (again, "**Poignant**") is an individual, upon information and belief a citizen of France, who resides in the State of Florida and is the majority owner of defendant FFIBI, and has been doing business as FFIBI in Puerto Rico and elsewhere since at least 2017, according to the Corporate Registry of the Puerto Rico Department of State, .

16.   Defendant First Finance International Bank, Inc. (again, "**FFIBI**"), is an international financial institution (IFE) authorized to do business in Puerto Rico and holding License OCIF# IFE041 from the Government of Puerto Office of the Commissioner of Financial Institutions ("**OCIF**" by its Spanish acronym), with its physical and postal address is 2 Ponce de León Ave. Suite 1702, San Juan, PR 00918, and with telephone numbers (845) 337-6774 and 1 (888) 363-1895.

**2.   Defendant Sergey Slastikhin.**

17.   Defendant SERGEY V. SLASTIKHIN (again, "**Sergey**") is, upon information and belief, a citizen of Russia and a resident of the State of Florida.

18.   In addition to being engaged in the pattern of racketeering activity alleged in this Complant, Sergey is an international fugitive (having been arrested *in absentia*) from Russia, wanted by the Russian Government for allegedly embezzling tens of millions of dollars from Roscosmos, and absconding with state secrets of the Russian Federation.

19.   According to press reports, Sergey owns and operates a company by the name of ES Reliable Investment ("**ES**"), incorporated in 2016 and with its principle office at 17070 Collins Avenue, Suite 260, Sunny Isles Beach, Florida, with its "major business emphasis [in] Automated Teller Machines (ATM) and Information Technology (IT applications" operating in the "digital financial software environment" as well as an "ESR Wallet" which was "founded" by him, and is the "former co-owner of Paytoo, an e-Money company that has been working in the USA since 2005[," as well as many other businesses.

20.   **Exhibit 3** hereto is a list of just some of Sergey's various companies through which he conducts his pattern of racketeering.

21.  **Exhibit 4** hereto collects some articles in the press about Sergey's activities.

### 3.  The Paytoo Companies.

22.  Poignant and, upon information and belief, Sergey, have been and/or are partners in a number of corporations and entities (again, the "**Paytoo Companies**"), and Sergey was the "former co-owner of Paytoo, an e-Money company that has been working in the USA since 2005."

### 4.  B High House International PTE LTD.

23.  B High House International PTE LTD (again, "**BHHI**") is a corporation organized and existing under the laws of the Republic of Singapore with its principal place of business and its registered address at address at 60 Paya Lebar Road #05-40A Paya Lebar Square, Singapore; BHHI is in the business of managing and collecting payments for the group of companies to which it belongs and is, upon information and belief, owned by defendant Wagner.

24.  BHHI is the plaintiff in the Singapore Case, discussed above and below, in which it has falsely claimed that MCDP is indebted to it, seeking to give BHHI a proprietary interest in the Frozen Funds now on deposit with the Clerk of the Court in the Puerto Rico Case in which BHHI has sought to intervene and been thrice denied, seeking to delay the release of the majority of MDDP's funds that were deposited with  FFIBI in April 2020, and then withheld from MCDP by FFIBI (the "**Frozen Funds**"), and are now subject to disbursement to MCDP pursuant to the Disbursement Order entered yet again by the District Court in the Puerto Rico case last week [Docket No. 174 in the Puerto Rico Case].

**5.  Persons and Entities related to BHHI:  BHHI's Confederates.**

25.  Defendant UDI HAIK ("**Haik**") is an individual of unknown citizenship who, upon information and belief, resides or has his offices in Limasol, Cyprus.

26.  Defendant DANIEL BERGER ("**Berger**") is an individual and, upon information and belief, a citizen and resident of Pardes Chana, Israel.

27.  Berger is the person who converted monies belonging to BHHI that BHHI has falsely claimed rights to in both the Singapore Case and the Puerto Rico Case.

28.  Defendant DALTON WAGNER a/k/a "Shay" ("**Wagner**") is a resident of Costa Rica, and the principal owner of the internet gambling platform Betonline.com ("**Betonline**").

29.  Wagner obtained information by false pretenses from MCDP and passed it along to BHHI for the purpose of presenting distorted information in the Singapore Case to help BHHI to intervene in the Puerto Rico Case. in its effort to block the Disbursement of MCDP's FFIBI Deposit to MCDP.

30.  **Exhibit 5** hereto is a genuine copy of an article from the online publication gamblingsites.org explaining the history of Betonline.com and its takeover by defendant Wagner.

31.  Rofiqoh bin Mahfud, has alleged in various affidavits filed in the Singapore Case that he is a BHHI Account Manager; the passport identified in his affidavits was identified by the Embassy of Indonesia in Ottowa, Canada, as false.

32. Blue High House S.A., upon information and belief, a corporation organized and existing under the laws of the Republic of Panama and an affiliate of BHHI.

**6. Banks with which the Poignant Defendants do business.**

33.  Poignant and the other Poignant Defendants do business with and through a wide variety of banks and financial institutions across the United States and around the world; their roles will be more fully developed in discovery.

34.  **Exhibit 6** is a list of some of the banks and financial institutions with which the Poignant Defendants and the Sergey Defendants do business.

## III.  JURISDICTION AND VENUE.

35.  This Honorable Court has jurisdiction over the matters alleged in this Complaint under RICO because the most recent acts in furtherance of the FFIBI Enterprise, discussed below, occurred in Puerto Rico, and pursuant to 28 U.S.C. §1332(a) because the Plaintiff MCDP is a citizen of the Republic of Singapore; defendant FFIBI is a Puerto Rico company; Poignant and the other Poignant Defendants are citizens of states other than Puerto Rico, or foreign countries; Sergey and the Sergey Defendants and defendants Haik, Berger, and Wagner, are citizens of states other than Puerto Rico, or foreign countries; and the claims for relief in controversy exceed the sum of $75,000, exclusive of interest and costs.

36.  Plaintiff's claims for relief allege violations of Public Law No. 91-45, Title IX, 84 Stat. 922, 941 (1970), *codified at* 18 U.S.C. §§ 1961-1968 (RICO), and certain other state claims for relief that are so related to these federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

37.  This Honorable Court also has jurisdiction over the subject matter of this action under 18 U.S.C. § 1961, *et seq*., 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

38.  Personal jurisdiction and venue in this district are proper under 18 U.S.C. § 1965 (a) and (b) and 28 U.S.C. § 1391(b), because:  (1) the defendants are found in, have agents in, or transact their business and affairs in, this district, (2) a part of the events or omissions giving rise to the claims for relief occurred in this district, and (3) the ends of justice are met because separate trials would give rise to inconsistent verdicts and put unnecessary strains on judicial resources.

## IV.  <u>FACTS COMMON TO ALL CAUSES OF ACTION.</u>

### A.  <u>Plaintiffs meet Defendants FFIBI, Poignant, Berger, Haik, Wagner, and FFIBI.</u>

#### 1.  <u>Remittance processing services.</u>

39.  Remittance processing services for third parties occur where one party transfers money to another party; broadly speaking, any payment of an invoice or a bill can be called a remittance.

#### 2.  <u>Plaintiff Carbonara meets the BHHI Confederates, Haik, Berger, and Wagner.</u>

40.  Carbonara first met defendant Berger in 2011, and maintained infrequent contact with him since both were in the payments field; MCDP first did business with Berger in 2017, for Remittance Processing Services.

#### 3.  <u>"Shay" takes out MCDP as a competitor; FAMSA Bank in Mexico.</u>

41.  Plaintiffs had their first interaction with Wagner in late October 2019, when he was introduced to them by Berger, who identified Wagner (obfuscating his real identity) only as "Shay."

42.  "Shay" was presented to Plaintiffs by defendant Berger as a "booking agent" whose "principal" was seeking "remittance processing services" such as those provided by MCDP.

43.   Shay and Berger proceeded to utilize MCDP's "platform" for their Remittance Processing Services.

44.   After a period of time, in April and May 2020, the bank that MCDP utilized for Remittance Processing Services, FAMSA Bank in Mexico, whose payment processor was Feenicia, advised MCDP that FAMSA would no longer provide Remittance Processing Services for MCDP.

45.   MCDP discovered in March 2020 that a smaller client, identity unknown, was chosen by FAMSA Bank over MCDP to provide Remittance Processing Services for FAMSA Bank's clients.

46.   MCDP was mystified because its transaction volume with FAMSA Bank was substantial and provided considerable revenue to FAMSA Bank that was much higher than the revenue that it obtained from the smaller account.

47.   MCDP subsequently discovered that, one by one, its clients refused to continue to do business with it.

48.   In less than two months after it terminated its relationship with MCDP, FAMSA Bank – which had chosen to do business with the "smaller account" – was closed due to irregularities found by the regulators in Mexico, and it declared bankruptcy in September 2020.

49.   FAMSA Bank had negotiated a settlement with MCDP in June 2020.

50.   In parallel with the situation with FAMSA Bank, in October 2019, MCDP was looking to place Mexican pesos that it had earned in its Remittance Processing business into a safekeeping account, but did not want to do a FOREX exchange because the Mexican Peso had fallen 25% due to falling oil prices, and it wanted to protect its assets against currency fluctuations.

51.  In October 2019, Plaintiffs were introduced to Poignant and FFIBI by Haik, a mutual

associate of Carbonara and Berger, to whom MCDP had previously met through Berger.

### 4.  <u>Poignant and the BHHI Confederates conspire to take out MCDP again</u>.

52.  BHHI and BHHI's Confederates were swinging into action to stop BHHI's

competitor, MCDP.

53.  On or about April 14, 2020, following the recommendation of Haik, MCDP opened a

business bank account with FFIBI, identified as XXXXXX0304 ("**MCDP's FFIBI Account**").

54.  MCDP's FFIBI Account was funded with deposits from MCDP and MCDP agreed in

a series of emails with Poignant and FFIBI that the deposit into MCDP's FFIBI Account, in

Mexican pesos, would collateralize a loan to MCDP.

55.  Under the pretext that FFIBI would collateralize the loan, on April 16, 2020, an

initial amount of 12,349,789.00 MXN (Mexican pesos) was deposited into MCDP's FFIBI

Account via an incoming wire transfer, equivalent to US $625,192.66 (again, "**MCDP's FFIBI**

**Deposit**").

56.  MCDP did not know then, but subsequently discovered, that the date of MCDP's

FFIBI Deposit was the last time that MCDP would have the ability to access or control any of the

funds deposited in MCDP's FFIBI Account.

57.  On May 2, 2020, Carbonara's email to C. Ravier of FFIBI ([c.ravier@FFIBIi.com](mailto:c.ravier@FFIBIi.com))

("**Ravier**") advised that:

> The Pesos are currently on deposit with you.  You can hold pesos in cd as
> collateral.  I will hold the risk of any fluctuations.  370k LTV against 401k
> is about 72% ... So again, if FFIBII holds pesos cd as collateral for
> duration of the usd loan, I will hold the exchange rate risk.  Let me know
> how to proceed and next steps.

58.   By his May 4, 2020, email to Poignant, Ravier asked:  "What do u think?  I think he wants to do this because he hopes (with reason) thay [sic] the peso will go up and if it does and we have to buy it with $ we will lose our shirts.  That would be fine if we kept the pesos... but... we know we cant... So what do we do?"

59.   Requests by MCDP during May 2020, for outbound transfers from MCDP's FFIBI Deposit were falsely confirmed on the FFIBI Platform Account, and when MCDP inquired why the transfers in or out had not been been executed or posted, Luis A. López, Senior Operations Manager of FFIBI, lied to MDCP in an email stating that FFIBI was finalizing incomings from the previous Friday "today" (5/27/20) and that "these wires can usually take anywhere from 48 to 72 business hours[,]" but none were accounted for by FFIBI, despite subsequent requests therefor.

60.   None of the above outbound transactions was posted, and very large amounts (approximately $612,848.21 USD) had not been executed or posted, but received no response from FFIBI until Poignant sent MCDP a cryptic email on June 2, 2020, stating:  "Your account show some potential irregularities and our compliance and legal department is actually looking at it[,]" and due to the alleged unknown "irregularities," FFIBI imposed a hold on incoming funds and payments from MCDP's FFIBI Account (the "**MCDP Account Freeze**"):

61.   On or around June 2, 2020, through at least June 5, 2020, MCDP began receiving messages from clients and receiving entities inquiring of the whereabouts of the multiple wire transfers previously confirmed by FFIBI, and on June 2, MCDP first became aware that FFIBI had unilaterally placed the MCDP Account Freeze, and that the confirmations that FFIBI had sent to MCDP were fraudulent and the moneys were never transferred as instructed by MCDP; nor was the US$ Loan to MCDP, collateralized by the MCDP Deposit, consummated by FFIBI.

62.  To justify the MCDP Account Freeze, FFIBI alleged that an unidentified third party had allegedly complained to FFIBI about certain supposed "illegalities" and/or that the MCDP Account Deposit did not belong to MCDP, according to information provided by Poignant, who sent a June 2, 2020, email to MCDP, stating (grammatical errors in original):

> [I]t has been Brough to our attention that the money you received are from customers' processing reserve and to be paid to customer, and that this money was not belonging to you
>
> We have received a request to froze this money and we are now doing an investigation.
>
> I'm sure that you will agreed that making a complaint about money received illegally using a company name very similar to an other one who did receive also some money from processing will be more difficult for you to justify the right ownership than us to justify to block a transaction in order to verify the legitimacy
>
> I told you that we will contact you tomorrow or Thursday for further explanations and we will, but for now your account is frozen and cannot have outgoing transactions

63.  Since the filing of the Puerto Rico Case, MCDP has learned that the specific claims made by this unknown third party were, in fact, made by BHHI, upon information and belief, acting in concert with defendants FFIBI, Poignant, Berger, and Wagner.

64. As of the date of its filing of the Puerto Rico Case in October 2020, MCDP had not received any written notice from FFIBI regarding the results of the alleged investigation or its status, nor had FFIBI identified the alleged complainant that purportedly gave rise to the MCDP Account Freeze.

65.  To honor its commitments to its clients and/or vendors, because of FFIBI's unauthorized and wrongful hold on MCDP's FFIBI Account, MCDP had payments made to some of these clients and/or vendors in the amount of $438,565.37 USD.

66.  MCDP also contacted Haik, a personal friend of Poignant and the individual who had referred MCDP to FFIBI as an EFI to hold its funds, to communicate to Poignant that MCDP wanted to resolve any issues concerning the MCDP Account Freeze, and Haik assured Carbonara that he would contact FFIBI to resolve the issue.

67.  After allegedly consulting with Poignant, Haik informed Carbonara that FFIBI would release the MCDP Account Freeze on the condition that any amounts allegedly owed by MCDP to Haik would be paid first from MCDP's FFIBI Account.

68.  It is common for financial institutions to routinely monitor accounts for suspicious activity. For example, banks monitor accounts to prevent money laundering, suspected terrorist financing, or even writing or cashing bad checks, and in appropriate circumstances, may place a hold on a particular account, but none of the alleged reasons provided by FFIBI to justify the MCDP Account Freeze fell within any of the suspicious categories established in the banking regulations applicable to financial institutions and IFEs; nor did FFIBI provide MCDP with any legal justification whatsoever for the MCDP Account Freeze.

69.  If a Suspicious Activity Report ("**SAR**") was filed by FFIBI, then FFIBI violated the Bank Secrecy Act, as amended (BSA), 31 U.S.C. §§ 5311 *et seq*., by disclosing to MCDP the alleged suspicious activity situation; a financial institution, including any director, officer,

employee or agent of the financial institution, is prohibited from notifying any person or entity

involved in a SAR-related transaction that a SAR report has been filed (31 C.F.R. §

1020.320(g)).

70.  The attempt by FFIBI and Haik to obtain payment from MCDP to Haik as a

condition for releasing the MCDP Account Freeze violated Act 273-2012 and OCIF regulations

that require a financial institution to conduct its businesses with the highest banking and

financing wisdom/prudence; disclosure of a SAR filing can result in criminal prosecution and

very severe penalties can be imposed against the financial institution.

71.  The Financial Crimes Enforcement Network (FinCEN) has actively discouraged

financial institutions from filing "defensive SARs" which are defined as SARs filed without a

properly thorough or thoughtful investigation.

https//webstoregc.paulhastings.com/DemocratDocuments/PDFs/stay_currentO_fincen_sharpens_

teeth.pdf.

**B.  BHHI comes to FFIBI's aid:  The Singapore Case.**

72.  By mid-August 2020, the Frozen Funds in MCDP's FFIBI Account had been held for

more than four (4) months, without a valid explanation.

73.  On or about August 27, 2020, FFIBI informed MCDP that it had received a subpoena

to produce FFIBI's records pertaining to MCDP's account with FFIBI, issued by District Judge

Silvia Carreño Coll, United States Court for the District of Puerto Rico (the "**Puerto Rico**

**Subpoena Case**"), in a case that had been filed by BHHI in the High Court of the Republic of

Singapore filed against the instant Plaintiffs by BHHI (again, the "**Singapore Case**").

74.   The subpoena issued in the Singapore Case, In re ***Application of: B High House International PTE LTD***, Case No. 2020-0260 (SCC) ("Case No. 2020-0260"), that had been requested by the General Division of the High Court in the Republic of Singapore, was not a legally valid reason for MCDP's Account Freeze inasmuch as there was and is no judgment against MCDP in the Singapore Case; nor had – or has – the Singapore Court issued an order, duly validated in Puerto Rico through the procedure known as *Exequatur*, as mandated by Rule 55 of the Puerto Rico Rules of Civil Procedure of 2009, P.R. LAWS ANN. TIT. 32A AP. V R.55, that would justify a Puerto Rico court or Regulatory Agency issuing a directive for MCDP's Account Freeze.

75.   The improper MCDP's Account Freeze caused profound damages to MCDP and its owners and clients and/or vendors and to MCDP's reputation in the industry.

76.   MCDP has literally has had for nearly two (2) years no access to its and its clients' moneys that it deposited in MCDP's FFIBI Account to conduct necessary business transactions, thus causing damage to MCDP, its brand, image, and reputation, and exposing MCDP to liability for failure to timely pay its clients and/or vendors.

77.   At no time during the business relationship between MCDP and FFIBI and Poignant was there ever any doubt that the owner and principal shareholder of FFIBI was Poignant; upon information and belief, Sergey or his proxy was, or is, a shareholder of FFIBI.

78.  MCDP's FFIBI Account was opened on or about April 14, 2020, and on April 24, 2020, BHHI commenced the Singapore against MCDP and Carbonara, alleging that MCDP and Carbonara falsely misappropriated, through fraud, substantial funds it alleged belonged to BHHI.

**3.  The Singapore Case.**

79.  The Singapore Case, captioned ***B High House, International PTE LTD and MCDP Phoenix Services PTE LTD, et al.***, HC/Suit No. 371/2020, was filed on April 24, 2020, and remains pending before the General Division of the High Court in the Republic of Singapore and in it, BHHI claims that the Frozen Funds in the Puerto Rico Case belong, at least in part, to it.

80.  On May 4, 2020, the Singapore Court – based on an affidavit of a BHHI account manager, Rofiqoh bin Mahfud, an individual who is not even identified as a witness in the Singapore Case – issued what purported to be a world-wide injunction order and disclosure order for MCDP's and Carbonara's assets due to the allegedly high-risk that MCDP would dissipate its assets, including the funds belonging to BHHI.

81.  At no time did BHHI ever seek to make the Singapore Court Order an order of the United States District Court for the District of Puerto Rico by means of an *exaquatur*.

82.  BHHI has obtained – and, upon information and belief, fabricated – documents and information that it has utilized in its thrice-failed Intervention Effort in the Puerto Rico Case.

**2.  The Puerto Rico Case:  MCDP vs. Poignant and FFIBI over the Frozen Funds.**

**a.  MCDP sues Poignant and FFIBI for the return of MCDP's FIIB Deposit.**

83.  FFIBI refused to return or disburse the funds it had frozen in MCDP's FFIBI Account,

at first, hiding behind the allegations of BHHI to justify the MCDP Account Freeze (of the

"**Frozen Funds**").

84.   On October 8, 2020, MCDP filed its Complaint against FFIBI and Poignant in the

Puerto Rico Case, alleging breach of contract and other things and seeking a prejudgment

attachment of the Frozen Funds pursuant to Fed.R.Civ.P. 64(B), costs and attorneys' fees due to

FFIBI's temerity.

85.   In the Complaint in the Puerto Rico Case, MCDP alleged that the defendants placed it

under economic duress as justification for refusing to release the Frozen Funds, and its motion

filed in the Puerto Rico Case on December 21, 2020 [Docket No. 34 therein], sought to compel

FFIBI to deposit the Frozen Funds with the Clerk of the Court; by its Order the next day, the

Court in the Puerto Rico Case granted MCDP's motion to compel [Docket No. 36].

**b.   BHHI thrice-failed to Intervene in the Puerto Rico Court Case.**

86.   After the filing of several motions and the entry of multiple orders, FFIBI deposited

the sum of $625,192.66 with the Clerk of the Court in the Puerto Rico Case on December 11,

2020 [Docket No. 33 ($17,054.32 and $517,579.66)], and January 4, 2021 [Docket No. 37

($90,478.58)] (together, the "**FFIBI Deposit with the Clerk**")

87.   On January 8, 2021 – upon information and belief, having been advised by FFIBI of

the FFIBI Deposit with the Clerk – BHHI commenced what proved a relentless but fruitless effort

to intervene in the Puerto Rico Case, alleging that it, not MCDP, was the rightful owner of the

FFIBI Deposit with the Clerk (collectively, BHHI's failed efforts to intervene in the Puerto Rico

Case will hereafter be referred to as the "**Intervention Effort**").

88.   The Docket in the Puerto Rico Case is redolent with motions and orders leading to the demise of BHHI's Intervention Effort, with Orders rejecting it at Docket Nos. 69, 147, and 158, and, despite BHHI's many efforts to stay the Disbursement, resulting in Order to disburse most of the Deposit with the Clerk to MCDP.  [Docket No. 102 (the "**Disbursement Order**") and Docket Nos. 170 and 174].

### c.   "Shay" – introduced to Plaintiffs by Berger – turns out, in fact, to be none other than defendant Wagner; and defendant Wagner is BHHI!

89.   One of MCDP's former partners in its former Costa Rica remittance processing business discussed above and below was a gentleman by the name of "Adam" (hereafter, "**Adam**"), who was recently contacted by a software developer of a payments platform, Peter Warner ("**Warner**"), who, according to Adam, advised Adam of several things, regarding Shay, namely, *that "Shay" is Wagner and Wagner is the owner of BHHI!*

90.   Berger knew when he introduced MCDP to Shay that "Shay" was actually Wagner, who used the MCDP platform for his BHHI businesss knowing that MCDP wanted no business with Wagner.

91.   In similar fashion to Costa Rica, Wagner – masquerading as BHHI – used MCDP's platform and, after learning its trade secrets and connections, concocted a false story about missing money transfers allegedly belonging to BHHI, and filed the Singapore Case and commenced its relentless Intervention Effort.

92.   The transaction records from BHHI show that all monies transferred for BHHI by defendant Berger using the MCDP platform went to BHHI-assigned accounts, or to Berger and, given that the Singapore Case was filed using false allegations, it appears that Wagner, as Shay, set a trap for MCDP through Berger to have Haik introduce Poignant and FFIBI to Carbonara and then use Berger as the source to allow Poignant to keep the money in MCDP's FFIBI Account.

93.   Utilizing the same method that he had used in Costa Rica to freeze MCDP out of the market there (by having Berger introduce MCDP to "Shay") Wagner, as "Shay," conspired with Berger, Haik, and Poignant – using BHHI as their racketeering "Enterprise" – to effect MCDP's Account Freeze, then file the Singapore Case, forcing Plaintiffs to file the Puerto Rico Case in an effort to undo the MCDP Account Freeze and, in the Singapore Case, by fraudulently and nefariouly accusing **MCDP** of acting fraudulently, all in an effort to force MCDP into either selling its company or going bankrupt.

94.   The actions by all of the defendants involved in MCDP's Account Freeze followed the *modus operandi* of their longstanding pattern of racketeering; Wagner's techniques, in particular, were very similar to those of his mentors, the Gambino crime family.

95.   Exhibit 5 above tells the story of defendant Wagner and his Betonline.com precursors.

**C.  Defendants' Pattern of Unlawful and Fraudulent Conduct.**

**1.  The many cases against the Poignant Defendants and the Sergey Defendants.**

96.   In addition to the Puerto Rico Case, there has been substantial federal and state litigation against Poignant and the Poignant Defendants and Sergey and the Sergey Defendants in

the United States and elsewhere in which it has been alleged by a wide variety of persons, firms

and organizations (the "**Many Cases**").

97.   Plaintiffs in the Many Cases have alleged that Poignant and Sergey and their

companies have engaged in unlawful and fraudulent conduct, abundantly demonstrating their

pattern of racketeering; they receive monies from or incur indebtedness to third parties for

properties and/or services to be rendered or transmission to others of monies and properties by

them, then they refuse to return or distribute those monies received according to the agreements

therefor or to return the property obtained in exchange for indebtedness thereon, get sued for the

monies or properties out of which they have defrauded their victims, and either settle the litigation

for substantially less than they obtained by their fraud or simply fail to pay judgments against

them and agreementsser into which they enter to resolve litigation until the creditor gives up its

efforts to collect.

98.   **Exhibit 7** to this Complaint provides details of Many Cases that demonstrate the

defendants' *modus operandi* pursuant to which they engage in a pattern of racketeering activity,

including as the FFIBI Enterprise and the Paytoo Enterprise described below.

**2. <u>Sergey's Bankruptcy Case</u>.**

99.   To avoid many millions of dollars of actual or eventual judgments against him,

described above, on June 6, 2021, Sergey sought protection under the provisions of Chapter 13 of

the United States Bankruptcy Code in Chapter 13 Case No.21-15508-RAM in the United States

Bankruptcy Court for the Southern District of Florida ("**Sergey's Bankruptcy Case**"), seeking to

get away scot free from consequences for his malfeasance and fraudulent and criminal conduct.

100.   Sergey's creditors that appeared in his Bankruptcy Case included Great Ocean Properties LLC;  BMW Financial Services NA, LLC; American Express National Bank; TD Auto Finance, LLC; Daimler Trust (BK Servicing LLC); Holand Leasing USA, LLC, among others.

101.   As is evident from the subject matter of the law suits filed against him – unpaid for multiple homes; a Lambourgini, a Mercedes, a Bentley; interests in businesses; Russian state secrets – Sergey's chutzpah apparently knows no bounds.

102.   Motions to dismiss were filed and joined in by most of his creditors during Sergey's Bankruptcy Case, and by its Order entered on September 24, 2021, the Bankruptcy Court dismissed Sergey's Bankruptcy Case, **with prejudice**, prohibiting Sergey from filing any kind of bankruptcy case for one (1) year.

103.   A copy of the Order Granting Motion to Dismiss is **Exhibit 8** hereto.

104.   It appears that the Bankruptcy Court did not find Sergey's Bankruptcy Case to have been filed in good faith.

105.   MCDP pleads below causes of action under the civil provisions of the federal RICO Act, to recover the damages it has suffered at the hands of the Poignant and the Poignant Defendants, Sergey and the Sergey Defendants, and Haik, Berger, and Wagner.

106.   Undoubtedly, the books and records of the various defendants will reveal their unlawful and fraudulent "scheme" at their root of the many corporations owned and/or controlled by defendant Poignant around the United States and similar schemes they worked to the profound

detriment of MCDP and many other persons, firms, and organizations.

107.   Throughout the foregoing decades of criminal and civil fraudulent conduct, no case has ever added up the parts to stop the pattern of racketeering engaged in by Poignant and Sergey and their various Enterprises and their subsidiaries, affiliates, and cohorts, even as they defrauded a series of persons, firms, and organizations out of their money around the country and around the world.

108.   While Poignant may seek to minimize the nature of his actions as those of a "deadbeat" or someone facing "hard times," the decades-long pattern of fraudulent conduct, the sophisticated financial chicanery, and the dozens of lawsuits in which they have been drawn demonstrates that their pattern of conduct far exceeds that of a traditional "grifter" and clearly demonstrates a "pattern of racketeering."

109.   Numerous emails identified above demonstrating the defendants' use of the wire in their pattern of racketeering activity are collected in **Exhibit 9** hereto.

## V.  <u>CAUSES OF ACTION</u>.

110.   The allegations contained in paragraphs 1 through 109 of this Complaint are incorporated herein by this reference as if again fully set forth by Plaintiff MCDP.

111.   The Poignant Defendants and the Sergey Defendants have engaged in multiple violations of the federal mail fraud and interstate wire fraud statutes prohibiting "schemes to defraud."

112.   Defendant Poignant and the Poignant Defendants and Defendant Sergey and the Sergey Defendants have defrauded and conspired with one another, with BHHI's Confederates, and others, including defendants Haik, Berger, and Wagner, under the direction and control of defendant Poignant and defendant Sergey, to deprive scores of parties, including Plaintiffs MCDP and Carbonara, of their businesses and properties, and their goodwill, that included use of the United States mail and interstate wires.

113.   MCDP and others, including various persons, firms, and organizations, were the targets of the Poignant and the Poignant Defendants' and Sergey and the Surgey Defendants' and Haik's, Berger's, and Wagner's *decades* of violations of law, and their unlawful and fraudulent schemes to acquire and maintain control of the interests or funds of MCDP and Other Victims.

114.   The Poignant Defendants and the Sergey Defendants and defendants Haik, Berger, and Wagner, implemented their schemes to acquire and maintain control of the funds of their victims through fraud and manipulation, constituted unfair business practices, and interfered with business relationships of MCDP and their other victims, was adverse to the interests and reasonable expectations of MCDP and their other victims, based on their duration, their similarity, and their persistence (equaling "a regular way of doing business"), and will continue into the future unless stopped.

115.   The Poignant Defendants and the Sergey Defendants and defendants Haik, Berger, and Wagner, engaged in a series of unlawful and intentional schemes to defraud MCDP and many Other Victims, as set forth above and below, through intentional misrepresentations and

omissions (on the part of persons under a legal duty to speak with full candor.

116.  The Poignant Defendants and the Sergey Defendants, aided by defendants Haik, Berger, and Wagner, conspired with each other and others to achieve these goals.

117.  During this open-ended scheme to defraud and the conspiracy, they also schemed and agreed that they would, and did, abuse their professional obligations to MCDP, make false representations and promises, in particular, to MCDP and many Other Victims.

118.  MCDP and the other victims of the Poignant Defendants and the Sergey Defendants, aided by defendants Haik, Berger, and Wagner, reasonably and justifiably relied upon their intentional misrepresentations and omissions (on the part of persons under a legal duty to speak with full candor) and took as creditable their false manipulations of MCDP's and many Other Victims' trust that proximately caused injury to their businesses and properties.

1189.  The Poignant Defendants and the Sergey Defendants, aided by defendants Haik, Berger, and Wagner, devised schemes to obtain the business and property of MCDP and their many Other Victims, including but not limited to those identified below, through cheating and cozening MCDP and their Other Victims, to deposit their funds with the Poignant Defendants and the Sergey Defendants and their many companies, Other Victims by the use of mail fraud, wire fraud, and abuse of trust.

120.  In their impaired financial conditions, MCDP and the many Other Victims of the Poignant Defendants and the Sergey Defendants, aided by defendants Haik, Berger, and Wagner, had the right to be free of such illegal conduct, through the defendants' fraudulent schemes,

executed over years, through their duration, similarity, and persistence, as a regular way of doing

business.

121.  MCDP's and the Other Victims' claims arise out of the injuries and damages

suffered by them by reason of the conduct of a " pattern of racketeering activity" within 18

U.S.C. § 1961(5) by the defendants' violation of 18  U.S.C. §§ 1962 (d) - (c) by 18 U.S.C. §

1341 (mail fraud) and § 1343 (interstate wire fraud), that proximately caused those injuries and

damages.

122.  18 U.S.C. § 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to
> defraud, or for obtaining money or property by means of false or
> fraudulent pretenses, representations, or promises, or to sell, dispose of,
> loan, exchange, alter, give away, distribute, supply, or furnish or procure
> for unlawful use any counterfeit or spurious coin, obligation, security, or
> other article, or anything represented to be or intimated or held out to be
> such counterfeit or spurious article, for the purpose of executing such
> scheme or artifice or attempting to do so, places in any post office or
> authorized depository for mail matter, any matter or thing whatever, to be
> sent or delivered by any private or commercial interstate carrier, or takes
> or receives therefrom, any such matter or thing, or knowingly causes to be
> directed to be delivered by the person to whom it is addressed, any such
> matter or thing, shall be fined under this title or imprisoned not more than
> 20 years, or both.

123.  The Poignant Defendants, through, and acting in, the affairs of certain "enterprises,"

committed mail fraud in violation of 18 U.S.C. § 1341, that included placing in United States

post offices or in authorized depositories for mail, and taking and receiving from them, and

knowingly causing items to be delivered by United States mail including letters, billing for

services, sending payments for billed services, notices of corporate meetings, bank statements,

corporate correspondence, including formal filings and by interstate wire (emails) with OCIF,

banks and financial institutions, and among MCDP and their Other Victims, and Sergey and the

Sergey Defendants  did the same.

124.  MCDP is not yet in possession of each of all of these communications, which are in

the hands of the Poignant Defendants and the Sergey Defendants and their many Other Victims

in defendants' fraudulent "empire," including many other persons, firms or organizations, and

MCDP reasonably expects to obtain them through court supervised discovery, as permitted by

Fed.R.Civ.P. Rule 11(b)(3) and *Rotella v. Wood*, 528 US. 549 (2000).

125.  The Poignant Defendants and the Sergey Defendants, sometimes with BHHI's

Confederates, engaged in a " pattern of racketeering activity" within 18 U.S.C. § 1961(5)

constituted in part by mail fraud within 18 U.S.C.§ 1341, as incorporated in 18 U.S.C.§ 1961(1),

that is a pattern in the use  of United States mail to execute their scheme to defraud MCDP and

their Other Victims, by acquiring and maintaining control over interests, including monies due

and owing to MCDP and their Other Victims, thereby their business, interests, property,

goodwill, and assets, and subsequently avoiding the recovery by MCDP and their Other Victims

of the interests and monies due and owing to them pursuant to their dealings with the Poignant

Defendants and Sergey, in particular, defendant FFIBI's obligation to act in a fiduciary capacity

in connection with MCDP's FFIBI Account.

126.  The Poignant Defendants and the Sergey Defendants used the United States mail in

the execution of their schemes to defraud and to acquire and maintain control over MCDP's

FFIBI Account and the monies of their Other Victims to defraud MCDP and their Other Victims,

and is presently continuing and will continue to pursue their schemes and conspiracies

indefinitely unless ended by the action of this Honorable Court.

127.  18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to
> defraud, or for obtaining money or property by means of false or
> fraudulent pretenses, representations, or promises, transmits or causes to
> be transmitted by means of wire, radio, or television communications in
> interstate or foreign commerce, any writings, signs, signals, pictures, or
> sounds for the purpose of executing such scheme or artifice, shall be fined
> under this title or imprisoned not more than 20 years, or both.

128.  The Poignant Defendants and the Sergey Defendants through, and acting in the

affairs (management and operation) of, certain "enterprises," below,  committed "racketeering

activity" within 18 U.S.C.§ 1961(1) by the violation of interstate wire fraud within 18 U.S.C.§

1343 by the use of interstate wires or emailing numerous communications through sending or

causing to be sent or wired numerous documents regarding the affairs of MCDP and their Other

Victims, and wired instructions to financial institutions, transfers of funds, checks, and other

communications.

129.  MCDP is not yet in possession of each of these communications, which are in the

hands of the Poignant Defendants and the Sergey Defendants and their many Other Victims;

MCDP reasonably expect to get them through court supervised discovery.

130.  The Poignant Defendants and the Sergey Defendants engaged in a long-term pattern

of "racketeering activity" within 18 U.S.C.§ 1961(1) constituted in part by wire fraud within 18

CIVIL NO. _____ (___); *MCDP Phoenix Services PTE LTD., v. First Finance Internatioal Bank, Inc. et al.*
COMPLAINT - RICO
Page 30

U.S.C. § 1343.

131.  The Poignant Defendants and the Sergey Defendants and BHHI's Confederates will continue their schemes and conspiracies indefinitely unless now ended by the action of this Honorable Court.

132.  The Poignant Defendants and the Sergey Defendants, aided by BHHI's Confederates, engaged in multiple, repeated, and continuous acts of mail fraud and interstate wire fraud that constituted a "pattern of racketeering activity" under 18 U.S.C. § 1961(5).

133.  The Poignant Defendants' and the Sergey Defendants' and BHHI's Confederates' predicate acts are all related to the same goal in the scheme to defraud MCDP and their many Other Victims of monies due and owing to them.

134.  The Poignant Defendants' and the Sergey Defendants' and BHHI's Confederates' predicate acts are all related to the same or similar or similar purpose, to defraud MCDP and their many Other Victims out of the money and property and good will due them from their business relations with the Poignant Defendants and/or the Sergey Defendants.

135.  The predicate acts of the Poignant Defendants and the Sergey Defendants and BHHI's Confederates are not isolated events.

136.  The Poignant Defendants' and the Sergey Defendants' and BHHI's Confederates' continuing pattern of "racketeering activity" within 18 U.S.C.1961(1), including mail fraud and wire fraud, threaten to continue indefinitely and will not end until this Honorable Court stops it.

## VI.     CAUSES OF ACTION UNDER THE ORGANIZED CRIME <u>CONTROL ACT OF 1970 (RICO), 18 U.S.C. §§ 1961-1968</u>.

### FIRST CAUSE OF ACTION

### [AGAINST ALL DEFENDANTS FOR VIOLATIONS OF 18 U.S.C. § 1962(c)]

137.  The allegations contained in paragraphs 1 through 136 of this Complaint are incorporated herein by this reference as if again fully realleged by Plaintiffs.

138.  18 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly  or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

139.  MCDP is a  "person" within 18 U.S.C. §§ 1961(3) and 1964(c), "an entity capable of holding a legal or beneficial interest in property," and was injured in its business and property and good will by reason of the "racketeering activity" within 18 U.S.C.§ 1961(1) by the Poignant Defendants and The Sergey Defendants.

140.  Each of the Poignant Defendants and the Sergey Defendants and BHHI's Confederates is a "person" under 18 U.S.C. §§ 1961(3) and 1962(c), and "an entity capable of holding a legal or beneficial interest in property."

141.  FFIBI and BHHI were and are engaged in, and the activities of which affect, interstate commerce within 18 U.S.C. §§ 1961(4), 1962(c) (hereafter, the "**FFIBI Enterprise**" and the "**BHHI Enterprise**"), and are not defendants for the purposes of this cause of action.

142.   The Poignant Defendants and the Sergey Defendants and BHHI's Confederates (excluding FFIBI and BHHI) were employed by, or associated with, or participating in the affairs of, the FFIBI Enterprise and the BHHI Enterprise benefitting themselves, and the Poignant Defendants and The Sergey Defendants and BHHI's Confederates (excluding FFIBI and BHHI) conducted and participated, directly or indirectly, in the management and operation of the affairs of the FFIBI Enterprise and the BHHI Enterprise, in particular with respect to their targets MCDP and their Other Victims, through a "pattern of racketeering activity" within 18 U.S.C. §§ 1961(1), and (5) & § 1962(c), in particular:  multiple, repeated, and continuous violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 wire fraud).

143.   All of the Poignant Defendants and the Sergey Defendants' and BHHI's Confederates' misrepresentations were intentional.

144.   MCDP reasonably and justifiably relied on the intentional misrepresentations and omissions (on the part of persons under a legal duty to speak with full candor), and allowed the Poignant Defendants and the Sergey Defendants, through the Poignant Defendants and BHHI's Confederates, to manage the business and funds of the FFIBI Enterprise and the BHHI Enterprise, to the profound detriment and the injury of the business and property of MCDP and their Other Victims, by reason of their "racketeering activities" within 18 U.S.C. § 1961(1).

145.   These acts of mail fraud and interstate wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, by the Poignant Defendants and the Sergey Defendants and BHHI's Confederates, through the FFIBI Enterprise and the BHHIEnterprise, in particular in mailing letters and

emailing documents to MCDP and their Other Victims over many years, constituted a "pattern of racketeering activity" within 18 U.S.C. § 1961(1) violation of 18 U.S.C. §§ 1961(1), 1962(c).

146.  By reason of these violations of 18 U.S.C. § 1962(c), MCDP and the Other Victims of the Poignant Defendants and the Sergey Defendants and BHHI's Confederates suffered and will continue to suffer substantial injury to their "businesses and property" within 18 U.S.C. § 1964(c) by reason of the violations of 18 U.S.C. § 1962(c), committed by the Poignant Defendants and the Sergey Defendants and BHHI's Confederates, including substantial and irreparable loss of goodwill and business opportunities for MCDP and their Other Victims.

147.  MCDP pleads the comprehensive scope of the injury to business and property of MCDP and the Other Victims for the benefit of the Court, but it seeks only to recover for the injury to its "business and property" within 18 U.S.C.§ 1964(c).

148.  The Poignant Defendants and the Sergey Defendants and BHHI's Confederates (excluding FFIBI and BHHI) purposefully managed and operated the affairs of the FFIBI Enterprise and the BHHI Enterprise by engaging in  a "pattern of racketeering activity" within 18 U.S.C.§ 1961(5), in particular interstate wire fraud and mail fraud, in turn, for the purpose of increasing its revenue and profitability to the financial detriment of MCDP and the Other Victims and also to the benefit of the Poignant Defendants and BHHI"s Confederates (excluding FFIBI and BHHI) in its various business activities.

149.  The Poignant Defendants and the Sergey Defendants and BHHI's Confederates acted knowing that these  "racketeering activities" within 18 U.S.C. §§ 1961(1), 1962(c), 1964(c)

would proximately and directly cause MCDP and their Other Victims to suffer these damages to their business and property, within 18 U.S.C. § 1964(c).

150.  All of MCDP's and the Other Victims' damages were reasonably foreseeable by he Poignant Defendants and the Sergey Defendants and BHHI's Confederates and were anticipated as a substantial factor and a natural consequence of their pattern of "racketeering activity."

### SECOND  CAUSE OF ACTION

### [AGAINST ALL DEFENDANTS FOR VIOLATION OF 18 U.S.C. § 1962(d) BY CONSPIRING TO VIOLATE 18 U.S.C. §1962(c)]

151.  The allegations contained in paragraphs 1 through 150 of this Complaint are incorporated herein by this reference as if again fully realleged by Plaintiffs.

152.  18 U.S.C. § 1962(d) provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

153.  MCDP and the Other Victims are each a "person" under 18 U.S.C. §§ 1961(3) and 1964(c), and each "an entity capable of holding a legal or beneficial interest in property" and were injured by reason of the "racketeering activity" within 18 U.S.C.§ 1961(1) of the Poignant Defendants and The Sergey Defendants.

154.  Each of the Poignant Defendants and the Sergey Defendants and BHHI's Confederatesis a "person" under 18 U.S.C. §§ 1961(3) and 1964(c), and each is "an entity capable of holding a legal or beneficial interest in property."

155.  The FFIBI Enterprise and the BHHI Enterprise each constitutes an " enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), that was and is engaged in, and the activities of which affect, interstate commerce.

156.  FFIBI and BHHI are not defendants in this count.

157.  The Poignant Defendants, the Sergey Defendants, and BHHI's Confederates were employed by or associated with the management and operation affairs of the FFIBI Enterprise and the BHHI Enterprise.

158.  The Poignant Defendants and the Sergey Defendants and BHHI's Confederates conspired among themselves within 18 U.S.C. § 1962 (d) to conduct, operate, and manage the affairs of the FFIBI Enterprise and the BHHI Enterprise, directly or indirectly, by engaging in a " pattern of racketeering activity" within 18 U.S.C. § 1961(5) to wit: the commission of "racketeering activities" within 18 U.S.C. § 1961(1) in violation of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (interstate wire fraud).

159.  All of the alleged acts of the Poignant Defendants and the Sergey Defendants and BHHI's Confederates were intentional and willful.

160.  The Poignant Defendants and the Sergey Defendants and BHHI's Confederates acted knowing that these "racketeering activities" within 18 U.S.C. §§ 1961(1), 1962(c), and 1964(c) would proximately and directly cause MCDP and their Other Victims to suffer these damages to their "business and  property" within 18 U.S.C. § 1964(c), and all of MCDP's and their Other Victims' damages were reasonably foreseeable by the Poignant Defendants and the

Sergey Defendants and BHHI's Confederates (excluding FFIBI and BHHI) and were anticipated

as a substantial factor and a natural consequence of their pattern of "racketeering activity" within

18 U.S.C. § 1961(1).

### THIRD CAUSE OF ACTION

### [AGAINST ALL DEFENDANTS FOR VIOLATING 18 U.S.C. § 1962(c)]

161.  The allegations contained in paragraphs 1 through 160 of this Complaint are

incorporated herein by this reference as if again fully realleged by Plaintiffs.

162.  18 U.S.C. § (c) provides:

> It shall be unlawful for any person employed by or associated with any
> enterprise engaged in, or the activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly  or indirectly, in the conduct
> of such enterprise's affairs through a pattern of racketeering activity ...

163.  MCDP and the Other Victims are each a  "person" under 18 U.S.C. §§ 1961(3) and

1964(c), (d) "an entity capable of holding a legal or beneficial interest in property" and were

injured by reason of the "racketeering activity" within 18 U.S.C.§ 1961(1) of the Poignant

Defendants and the Sergey Defendants and BHHI's Confederates.

164.  Each of the Poignant Defendants and the Sergey Defendants and BHHI's

Confederates is a "person" under 18 U.S.C. §§ 1961(3) and 1962(c), and "an entity capable of

holding a legal or beneficial interest in property."

165.  For the purposes of this cause of action under 18 U.S.C. § 1962(c), neither FFIBI

nor BHHI is a defendant.

166.  For the purposes of this cause of action under 18 U.S.C. § 1962(c), FFIBI and BHHI constitute "enterprises" within 18 U.S.C. §§ 1961(4) and 1962(c) (the "**FFIBI Enterprise**" and the "**BHHI Enterprise**").

167.  The FFIBI Enterprise and the BHHI Enterprise are engaged in, and their activities affect, interstate commerce, in particular from 2000 through the present date, within 18 U.S.C. §§ 1961(4), 1962(c), and 1962(d).

168.  The officers, directors, executive administrators, and managers employed by or associated with the Poignant Defendants and the Sergey Defendants and BHHI's Confederates conducted and participated, directly or indirectly, in the management and operation of the affairs of the FFIBI Enterprise and the BHHI Enterprise.

169.  The affairs of the FFIBI Enterprise and the BHHI Enterprise included the targeting of property of MCDP and the Other Victims that was and remains held by defendant FFIBI (by means of the Puerto Rico Case).

170.  The targeting of the property and interests and goodwill of MCDP and the Other Victims was implemented by a "pattern of racketeering activities" within 18 U.S.C. §§ 1961(5) and § 1962(c), in particular violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (interstate wire fraud), that shows an intent to defraud manifest by their duration, their similarity, and their persistence, as a regular way of doing business, by the Poignant Defendants and the Sergey Defendants and BHHI's Confederates (excluding FFIBI and BHHI in the affairs of the FFIBI Enterprise and the BHHI Enterprise, to the present day.

171.  All of the alleged misrepresentations of the Poignant Defendants and the Sergey

Defendants and BHHI's Confederates were intentional.

172.  MCDP and the Other Victims trusted and justifiably and reasonably relied on the

intentional misrepresentations and omissions (on the part of persons under a legal duty to speak

with full candor) and the credibility of the manipulative statements by the Poignant Defendants

and the Sergey Defendants and BHHI's Confederates and allowed the Poignant Defendants and

the Sergey Defendants and BHHI's Confederates to manage the various Enterprises of the

Poignant Defendants and the Sergey Defendants and BHHI's Confederates, all to the profound

detriment of MCDP and the Other Victims.

173 .  In the case of MCDP, it justifiably and reasonably relied on the credibility of the

manipulative statements of defendants FFIBI and Poignant seeking to beguile MCDP into

depositing its monies into MCDP's FFIBI Account for the ultimate benefit of the Poignant

Defendants and the Sergey Defendants and BHHI and BHHI's Confederates.

174.  These multiple, repeated, and continuous acts of mail fraud and interstate wire fraud

in violation of 18 U.S.C. §§ 1341 and 1343, with express and implied fraudulent offers and

documents and letters designed to manipulate and cheat MCDP and the Other Victims  into

giving up its and their interests in property, and in unduly influencing MCDP and the Other

Victims through and with the United States mail and interstate wires used by the FFIBI

Enterprise and the BHHI Enterprise through the Poignant Defendants' and the Sergey

Defendants' and BHHI's Confederates' mailing of false letters, offers, reports, letters of intent,

faxing and/or emailing orders and instructions, mailing or emailing notices and other

communications over many years, and mailing other false and misleading documents over many

years; and, in more recent years, the same type of communications were transmitted by interstate

wire to MCDP and the Other Victims.

175.  By reason of these violations of 18 U.S.C. § 1962(c), MCDP and the Other Victims

suffered (and will continue to suffer) substantial injury to their "businesses and property" and

good will within 18 U.S.C. § 1964(c) by reason of the violations of 18 U.S.C. § 1962(c),

committed by the Poignant Defendants and the Sergey Defendants and BHHI's Confederates,

including unfair business practices, interference with business relationships, and substantial and

irreparable loss of goodwill and business opportunities for them.

176.  MCDP pleads the comprehensive scope of the injury to its and the Other Victims'

business and property goodwill by the Poignant Defendants and the Sergey Defendants and, in

the case of Plaintiffs, in particular, by BHHI's Confederates, for the benefit of the Court, but

seeks only to recover for the injury to its and their "business and property" and goodwill within

18 U.S.C.§ 1964(c).

177.  The Poignant Defendants and the Sergey Defendants and BHHI's Confederates

(excluding FFIBI and BHHI) purposely managed and operated the FFIBI Enterprise and the

BHHI Enterprise by engaging in multiple "racketeering activities" within 18 U.S.C.§ 1961(1),

that is, mail fraud and interstate wire fraud, for the purpose of increasing the FFIBI Enterprise's

and the BHHI Enterprise's, and thus their own, revenues and profitability, to the financial

detriment of MCDP and the Other Victims, and to the benefit of the Poignant Defendants and the

Sergey Defendants and BHHI's Confederates.

178.   The Poignant Defendants and the Sergey Defendants and BHHI's Confederates

(excluding FFIBI and BHHI) acted knowing that these "racketeering activities" within 18 U.S.C.

§§ 1961(1), 1962(c), 1964(c) would proximately and directly cause MCDP and the Other

Victims to suffer these damages to their "business and property" within 18 U.S.C. § 1964.

179.   All of MCDP's and the Other Victims' damages were reasonably foreseeable by the

Poignant Defendants and the Sergey Defendants and BHHI's Confederates (excluding FFIBI and

BHHI) and were anticipated as a substantial factor and a natural consequence of their pattern of

"racketeering activity" within 18 U.S.C. § 1961(1).


### FOURTH CAUSE OF ACTION

### [AGAINST ALL DEFENDANTS FOR VIOLATION OF 18 U.S.C. § 1962(d)<br>BY CONSPIRACY TO VIOLATE 18 U.S.C. § 1962(c)]

180.   The allegations contained in paragraphs 1 through 179 of this Complaint are

incorporated herein by this reference as if again fully realleged by Plaintiffs.

181.   18 U.S.C. § 1962(d) provides:  "It shall be unlawful for any person to conspire to

violate any of the provisions of subsection (a), (b), or (c) of this section."

182.   MCDP and the Other Victims are each a "person" under 18 U.S.C. §§ 1961(3) and

1964(c),  "an entity capable of holding a legal or beneficial interest in property," and was injured

by reason of the "racketeering activity" within 18 U.S.C.§ 1961(1) of the Poignant Defendants

and the Sergey Defendants and BHHI's Confederates.

183.  Each of the Poignant Defendants and the Sergey Defendants and BHHI's

Confederates is a "person" under 18 U.S.C. §§ 1961(3) and 1964(c), and each is "an entity

capable of holding a legal or beneficial interest in property."

184.  Poignant, Haik, Berger, and Wagner, and Sergey an "enterprise" within the meaning

of 18 U.S.C. §§ 1961(3) and 1964(c) (the "**5 Guys Enterprise**" and the "**5 Guys**") that were and

are engaged in, and the activities of which affect, interstate commerce.

185.  FFIBI and BHHI are not defendants in this cause of action.

186.  The Poignant Defendants and the Sergey Defendants and BHHI's Confederates

(excluding FFIBI and BHHI) were employed by or associated with and in the management and

operation of the affairs of the FFIBI Enterprise and the BHHI Enterprise.

187.  The Poignant Defendants and the Sergey Defendants and BHHI's Confederates

(excluding FFIBI and BHHI) conspired among themselves within the meaning of 18 U.S.C. §

1962(d) to establish conduct, operate, and manage the FFIBI Enterprise and the BHHI Enterprise,

directly or indirectly, by engaging in a "pattern of racketeering activity" within 18 U.S.C. §

1961(5) by the commission of multiple, repeated, and continuous "racketeering  activities"

within 18 U.S.C.§ 1961(1) by 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (interstate

wire fraud).

188.  As a result of the Poignant Defendants' and the Sergey Defendants's and BHHI's

Confederates'  (excluding FFIBI's and BHHI's) conspiracy and "racketeering  activities" within

18 U.S.C. § 1961(1) pursuant to it, Plaintiff MCDP and the Other Victims have suffered

substantial injury to their "business and property" and their goodwill within 18 U.S.C. § 1964(c).

189.   The Poignant Defendants and the Sergey Defendants and BHHI's Confederates

(excluding FFIBI and BHHI) purposely managed and operated the FFIBI Enterprise a nd the

BHHI Enterprise by engaging in multiple "racketeering activities" within 18 U.S.C.§ 1961(1),

that is, interstate wire fraud and mail fraud for the purpose of defrauding MCDP and theirOther

Victims out of the monies owed them to enhance their own revenue, profitability, and return on

investment to the financial detriment of MCDP and the Other Victims, and to the benefit of the

Poignant Defendants and the Sergey Defendants and BHHI's Confederates, in particular, FFIBI

and BHHI, and the Poignant Defendants and the Sergey Defendants and BHHI's Confederates

(excluding FFIBI and BHHI) acted knowing that these "racketeering activities" within 18 U.S.C.

§§ 1961(1), 1962(c), 1962(d), 1964(c) would proximately and  directly cause MCDP and the

Other Victims to suffer these damages to their "business and  property" and their goodwill within

18 U.S.C. § 1964(c).

190.   All of MCDP's and the Other Victims' damages were reasonably foreseeable by the

Poignant Defendants and the Sergey Defendants and BHHI's Confederates (excluding FFIBI and

BHHI) and were anticipated as a substantial factor and a natural consequence of their pattern of

"racketeering activity" within 18 U.S.C.§ 1961(1).

# VI.  <u>PLAINTIFF'S PRAYERS FOR RELIEF UNDER RICO CAUSES OF ACTION</u>.

## FIFTH CAUSE OF ACTION

### [AGAINST ALL DEFENDANTS FOR TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF UNDER THE FEDERAL RICO ACT]

191.   The allegations contained in paragraphs 1 through 190 of this Complaint are incorporated herein by this reference as if again fully set forth by Plaintiffs.

192.   The Exhibits attached to this Complaint establish that the Poignant Defendants and the Sergey Defendants and BHHI's Confederates, in particular, FFIBI, have defrauded and continue to defraud MCDP.

193.   Reputation damage is irreparable.

194.   Given the unlawful and fraudulent and bad faith conduct in which defendant FFIBI would have to engage in order to fabricate fraudulent conduct by MCDP in connection with the Frozen Funds, MCDP has a substantial probability of prevailing on the merits of obtaining a permanent injunction to stop such conduct.

195.   The written and allegations made to MCDP by FFIBI – as orchestrated by defendants FFIBI and Poignant and BHHI's Confederates as part of their regular way of doing business – illustrate their unlawful, fraudulent, and bad faith conduct prior and subsequent to the opening of MCDP's FFIBI Account, in the Puerto Rico Case, and in connection with the Singapore Case, right up to this date.

196.   The balance of the equities of awarding injunctive relief in favor of MCDP weighed against any harm that might be suffered by any of the Poignant Defendants, including FFIBI, and

BHHI's Confederates if enjoined from continuing to engage in their unlawful, fraudulent, and

bad faith course of conduct clearly favors the grant of injunctive relief to protect MCDP's

reputation and its contractual and other rights.

197.  Public policy compels parties to contracts to comply with the terms of their

contracts and discharge their contractual obligations in good faith, and abhors fraudulent conduct

by contracting parties, thus favoring the award of injunctive relief.

WHEREFORE, in view of the foregoing, Plaintiffs MCDP Phoenix Services PTE LTD

and Michael Carbonara respectfully request that this Honorable Court enter temporary,

preliminary, and permanent injunctive relief as follows:

A.  ENJOINING defendants FFIBI and Poignant from in any way, directly or indirectly,

ordering, instructing, encouraging or otherwise prompting its representatives to provide ANY

information or documents to BHHI with respect to MCDP's FFIBI Account;

B.  ENJOINING defendant FFIBI and Poignant from in any way, directly or indirectly,

ordering, instructing, encouraging, or otherwise prompting its representatives to prepare and/or

provide any information or documents to BHHI.

C.  MANDATING/ORDERING defendant FFIBI to pay the balance of the Frozen Funds

to MCDP.

## SIXTH CAUSE OF ACTION

### [AGAINST ALL DEFENDANTS FOR DAMAGES FOR THEIR VIOLATIONS OF FEDERAL RICO]

198.  The allegations contained in paragraphs 1 through 197 of this Complaint are

incorporated herein by this reference as if again fully set forth by Plaintiffs.

199.  As a direct and proximate result of these unlawful and intentional schemes to defraud as part of the Poignant Defendants and the Sergey Defendants' and BHHI's Confederates' pattern of racketeering, Plaintiffs have sustained and will continue to sustain actual, consequential, incidental, and statutory damages to its business and property in an amount not less than TEN MILLION DOLLARS ($10,000,000).

200.  18 U.S.C. § 1964(c) provides for the recovery of treble damages.

201.  Plaintiff MCDP is also entitled to recover its attorneys' fees, litigation expenses, and court costs under 18 U.S.C. § 1964(c).

202.  All conditions precedent to Plaintiffs' claim for attorneys' fees, litigation expenses, and court costs have been performed and occurred.

203.  Plaintiffs are entitled to equitable relief, as may be appropriate, under 18 U.S.C. § 1964(a), or other law, including disgorgement of illicit gains, a constructive trust, an equitable accounting for all illicit benefits, considerations, and revenues, gross profits, fees and earnings received, directly or indirectly, by the Poignant Defendants and the Sergey Defendants and BHHI's Confederates in any way, directly or indirectly, derived from their unlawful conduct in violation of 18 U.S.C. § 1961, *et seq*.

WHEREFORE, Plaintiffs MCDP Phoenix Services PTE LTD and Michael A. Carbonara very respectfully demands judgment against FIRST FINANCE INTERNATIONAL BANK, INC.; MICHEL POIGNANT; THE POIGNANT DEFENDANTS; SERGEY

CIVIL NO. _____ (___); *MCDP Phoenix Services PTE LTD., v. First Finance Internatioal Bank, Inc. et al.*
COMPLAINT - RICO
Page 46

VLADIMIROVICH. SLASTIKHIN; THE SERGEY DEFENDANTS; UDI HAIk: DANIEL

BERGER; DALTON WAGNER a/k/a "Shay," jointly and severally, in an amount not less than

**TEN MILLION DOLLARS ($10,000,000)**, trebled to an amount in excess of **THIRTY**

**MILLION DOLLARS ($30,000,000)**, plus prejudgment and post-judgment interest thereon,

and for their attorneys' fees and costs, the imposition of a constructive trust, the voiding of

unlawful transfers, the disgorgement of all ill-gotten revenues, gross profits and earnings and any

and all amounts by which any and all of the Poignant Defendants and the Sergey Defendants and

BHHI's Confederates has been unjustly enriched, and such other and further relief as to this

Honorable Court seems just and proper under the circumstances.

DATED: November 9, 2021, in San Juan, Puerto Rico.


*S/Michael A. Carbonara*
MICHAEL A. CARBONARA, PRESIDENT
PLAINTIFF MCDP PHOENIX SERVICES
PTE LTD and PERSONALLY


**DEMAND FOR JURY TRIAL**

MCDP Phoenix Services PTE LTD hereby demands trial by a jury on all of the causes

of action in this Complaint which are triable by a jury.


*S/Michael A. Carbonara*
MICHAEL A. CARBONARA

CIVIL NO. _____ (___); *MCDP Phoenix Services PTE LTD., v. First Finance Internatioal Bank, Inc. et al.*
COMPLAINT - RICO
Page 47

RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, on November 9, 2021.

WEINSTEIN-BACAL, MILLER & VEGA, P.S.C.
González-Padín Building - Penthouse
154 Rafael Cordero Street, Plaza de Armas
Old San Juan, Puerto Rico 00901
Telephone:  (787) 977-2550; (540) 592-3505
Telecopier:  (787) 977-2559

By:     ***S/Stuart A. Weinstein-Bacal***
        Stuart A. Weinstein-Bacal
        U.S.D.C. No. 298166
        Cellular: (540) 272-7000

By:     ***S/Peter W. Miller***
        Peter W. Miller
        U.S.D.C. No. 213609
        Cellular: (787) 617-5258

By:     ***S/Javier A. Vega-Villalba***
        Javier A. Vega-Villalba
        U.S.D.C. No. 227306
        Cellular: (939) 969-7460

**Of Counsel:**                    PROFESSOR G. ROBERT BLAKEY
*Pro hac vice motion to be filed.*   WILLIAM J. & DOROTHY T. O'NEIL
                                   Professor of Law Emeritus
                                   Notre Dame Law School
                                   8630 E. Monterosa Avenue
                                   Scottsdale, Arizona 85321-2949
                                   Telephone:  (574) 514-8220
                                   Email:  blakey.1@nd.edu

                          By:     ***S/G. Robert Blakey***
                                  G. Robert Blakey
                                  District of Columbia Bar No. 424844