IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MCDP PHOENIX SERVICES PTE LTD. and
MICHAEL A. CARBONARA,

   **Plaintiffs,**

            v.

FIRST FINANCE INTERNATIONAL BANK,
INC., MICHEL POIGNANT, SERGEY
VLADIMIROVICH SLASTIKHIN, UDI HAIK,
DANIEL BERGER, and DALTON WAGNER,

   **Defendants.**

CIVIL NO. 21-1534 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is the Motion to Dismiss filed by co-Defendants First Finance International Bank, Inc. ("First Finance") and Michel Poignant ("Poignant"). Docket No. 24. The claims against First Finance were dismissed with prejudice per Plaintiffs MCDP Phoenix Services PTE LTD. ("MCDP") and Michael A. Carbonara's ("Carbonara") (collectively, "Plaintiffs") Motion for Voluntary Dismissal filed at Docket No. 41.[1] As such, the Motion to Dismiss is limited to Defendant Poignant. Pursuant to this Opinion and Order, Defendant Poignant's Motion to Dismiss is hereby **GRANTED**.

---

[1] Plaintiffs entered into a Confidential Settlement Agreement and Release with First Finance, and filed a Motion for Voluntarily Dismissal with Prejudice as to First Finance. Docket No. 41. The Court granted the motion, Docket No. 43, and partial judgment was entered, Docket No. 44.

CIVIL NO. 21-1534 (JAG)                                                                                                    2

## BACKGROUND[2]

Plaintiffs filed the Complaint alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, against First Finance, Poignant, Sergey Vladimirovich Slastikhin, Udi Haik ("Haik"), Daniel Berger, and Dalton Wagner. Docket No. 1. Defendant Poignant is the majority owner of First Finance. Docket Nos. 1 at ¶¶ 15, 77; 18 at 4. The facts alleged as to Defendant Poignant are at times unclear as Plaintiffs repeatedly refer to "the Poignant Defendants," a collective of Defendant Poignant and First Finance, throughout the Complaint and the RICO Case Statement. *See* Docket Nos. 1 at ¶¶ 15-16; 18 at 10, 15, 27, 29. The "Poignant Defendants" are held culpable for several of the alleged facts that form the foundation of Plaintiffs' claims. This presents the Court with a conundrum as it makes it difficult for the Court to decipher what facts are explicitly alleged as to Defendant Poignant as opposed to First Finance.

The facts as they specifically pertain to Defendant Poignant are as follows. Around April 14, 2020, Plaintiff MCDP, allegedly at the recommendation of co-Defendant Haik, opened an account with First Finance. Docket No. 1 at ¶ 53. Through email discussions between MCDP and Defendant Poignant, MCDP agreed that the deposits it placed into that account would serve to collateralize a loan to MCDP. *Id.* at ¶ 54. On April 16, 2020, MCDP deposited the equivalent of USD $625,192.66 into an account with First Finance by wire transfer. *Id.* at ¶ 55. Subsequently, on May 2, 2020, Plaintiff Carbonara sent the following email to a First Finance employee:

> The Pesos are currently on deposit with you. You can hold pesos in cd as collateral. I will hold the risk of any fluctuations. 370k LTV against 401k is about 72% . . . So again, if [First Finance] holds pesos

---

[2] The facts are taken from the well-pled allegations in Plaintiffs' Complaint, Docket No. 1, and Plaintiffs' RICO Case Statement, Docket No. 18, and are presumed to be true.

CIVIL NO. 21-1534 (JAG) 3

> cd as collateral for duration of the usd loan, I will hold the exchange rate risk. Let me know how to proceed and next steps.

*Id.* at ¶ 57. The same employee then emailed Defendant Poignant on May 4, 2020 and stated the following:

> What do u think? I think he wants to do this because he hopes (with reason) [the] the peso will go up and if it does and we have to buy it with $ we will lose our shirts. That would be fine if we kept the pesos . . . but . . . we know we [cant'] . . . So what do we do?

*Id.* at ¶ 58. Through May 2020, MCDP made requests for outbound transfers that were allegedly falsely confirmed by First Finance. *Id.* at ¶ 59. On June 2, 2020, Defendant Poignant sent MCDP an email that stated, "[y]our account show[s] some potential irregularities and our compliance and legal department is actually looking at it." *Id.* at ¶ 60. Defendant Poignant additionally told MCDP via email,

> [I]t has been [b]rough[t] to our attention that the money you received [was] from customers' processing reserve and [are] to be paid to customer[s], and that this money [did] not belong[] to you[.] We have received a request to fr[ee]ze this money and we are now doing an investigation. I'm sure that you will agree[] that making a complaint about money received illegally using a company name very similar to [an]other one who did receive also some money from processing will be more difficult for you to justify the right ownership than [for] us to justify to block a transaction in order to verify the legitimacy[.] I told you that we will contact you tomorrow or Thursday for further explanations and we will, but for now your account is frozen and cannot have outgoing transaction

*Id.* at ¶ 62. Plaintiffs allege that a third party, B High House International PTE LTD, falsely made these claims and did so in concert with First Finance and Defendant Poignant with the intention to defraud Plaintiffs. *Id.* at ¶¶ 63, 112. After MCDP received Defendant Poignant's email, it reached out to co-Defendant Haik and requested he communicate with Defendant Poignant to resolve the account freeze. *Id.* at ¶ 66. Per Plaintiffs, "[a]fter allegedly consulting with Poignant, Haik

**CIVIL NO.** 21-1534 (JAG)                                                                                                  4

informed Carbonara that [First Finance] would release the MCDP Account Freeze on the condition that any amounts allegedly owed by MCDP to Haik would be paid first from MCDP's [First Finance] Account." *Id.* at ¶ 67.

As a result of the account freeze, MCDP filed a complaint for breach of contract against First Finance and Defendant Poignant on October 8, 2020. *Id.* at ¶ 84. Plaintiffs claim "MCDP had not received any written notice from [First Finance] regarding the results of the alleged investigation or its status, nor had [First Finance] identified the alleged complainant that purportedly gave rise to the MCDP Account Freeze," by the time it filed the October 8, 2020 action. *Id.* at ¶ 64. On December 21, 2020, MCDP filed a motion to compel First Finance to deposit the frozen funds with the Clerk of the Court. *Id.* at ¶ 85. The motion was granted. *Id.*

Plaintiffs allege that Poignant engaged in a pattern of racketeering and conspiracy dating back to 2005. Docket No. 18 at 11. Plaintiffs additionally contend that "[u]ndoubtedly, the books and records of the various defendants will reveal their unlawful and fraudulent 'scheme' at [the] root of the many corporations owned and/or controlled by defendant Poignant . . . ." Docket No. 1 at ¶ 106.

## STANDARD OF REVIEW

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive dismissal under this standard, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007). According to *Twombly*, the complaint must state enough facts to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id.* at 1974. Therefore, to preclude

**CIVIL NO.** 21-1534 (JAG)                                                                                                   5

dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

At the motion to dismiss stage, courts accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1988). Thus, plaintiff bears the burden of stating factual allegations regarding each element necessary to sustain recovery under some actionable theory. *Goolev v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Courts need not address complaints supported only by "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

## ANALYSIS

To succeed under a civil RICO claim,

> a plaintiff must allege a violation of section 1962 and an injury by reason of that violation. The underlying section 1962 violation in turn requires demonstrating: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The statute separately defines 'pattern of racketeering activity' to require at least two acts of racketeering activity.

*Lerner v. Colman*, 26 F.4th 71, 77 (1st Cir. 2022) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) and 18 U.S.C. § 1961(5)) (cleaned up). Plaintiffs must provide particularized facts not only as to the claim of fraud, but also as to each specific defendant. *Am. Buying Ins. Servs. v. S. Kornreich & Sons*, 944 F. Supp. 240, 247-48 (S.D.N.Y. 1996). "[F]or each defendant, [Plaintiffs must] allege facts tending to show with particularity that the defendant committed at least two predicate acts." *Id.* Additionally,

> the plaintiff must demonstrate that the predicates are related, *and* that they amount to or pose a threat of continued

**CIVIL NO.** 21-1534 (JAG)                                                                                                         6

> criminal activity. Acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. To establish continuity, the plaintiff must show that the related predicates amounted to, or posed a threat of, continued criminal activity.

*N. Bridge Assocs., Inc. v. Boldt*, 274 F.3d 38, 42 (1st Cir. 2001) (cleaned up). Acts that happened over a short period of time, which do not threaten future criminal conduct, do not satisfy the predicate acts requirement. *Id.* at 43.

Due to the exceptional nature of the statute, complaints that allege a RICO claim must comply with uniquely stringent pleading standards to survive a motion to dismiss. *Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 443 (1st Cir. 2000) ("Although the pleadings should generally be construed liberally, a greater level of specificity is required in RICO cases.") (cleaned up). The First Circuit has noted that because

> Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device . . . it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering.

*Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991), *abrogated on different grounds by United States v. Velazquez-Fontanez*, 6 F.4th 205, 213 n.2 (1st Cir. 2021). A plaintiff must show that "the defendants' actions were not only a but for cause of plaintiff's injury, but the proximate cause as well." *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, LTD*, 990 F.3d 31, 35 (1st Cir. 2021) (cleaned up).

Plaintiffs have failed to sufficiently allege the required predicate acts as to Defendant Poignant. In fact, the Court is confused as to the nature of Plaintiffs' claims against Defendant

**CIVIL NO. 21-1534 (JAG)**                                                                 7

Poignant and the grounds upon which those claims rest. *See* Docket No. 24-1 at 20. Plaintiffs contend that

> While Poignant may seek to minimize the nature of his actions as those of a "deadbeat" or someone facing "hard times," the decades-long pattern of fraudulent conduct, the sophisticated financial chicanery, and the dozens of lawsuits in which they have been [included] demonstrates that their pattern of conduct far exceeds that of a traditional "grifter" and clearly demonstrates a "pattern of racketeering."

Docket No. 1 at ¶ 108. However, Plaintiffs fail to allege any concrete actions that would require Defendant Poignant to defend himself as they fail to show a pattern of fraudulent conduct. More so, the predicate acts alleged in the Complaint and RICO Case Statement that are specific to Defendant Poignant do not extend beyond a few email communications in which he discussed the terms of the MCDP account and those where he later informed MCDP that its account was frozen due to circumstances that required investigation. Docket No. 18 at 13-14.[3] Other than conclusory

---

[3] Plaintiffs' RICO Case Statement asserts that

> The Predicate Acts which most clearly demonstrate with particularity the circumstances constituting fraud include, but are not limited to:
>
> i. Exchange of emails between Plaintiffs MCDP and Carbonara and [FIRST FINANCE]'s C. Ravier and Poignant in April and May 2020 (the 'April-May 2020 Emails'), subsequent to the introduction of MCDP and Carbonara to [FIRST FINANCE] and Poignant by defendant Haik, regarding the establishment by MCDP of MCDP's [FIRST FINANCE] Account and the making of MCDP's [FIRST FINANCE] Deposit. Upon information and belief, the May 4, 2020, email from c.ravier@ffibi.com that went to Plaintiff Carbonara was intended for defendant Poignant, but was mistakenly directed to Carbonara. By various of the April-May 2020 Emails, defendants Poignant and [FIRST FINANCE] assured MCDP and Carbonara that the funds included in MCDP's [FIRST FINANCE] Deposit in MCDP's [FIRST FINANCE] Account would be wired as instructed by [FIRST FINANCE].
>
> ii. Exchange of emails between Carbonara of MCDP and Poignant of [FIRST FINANCE] inquiring about the wire transfers that MCDP instructed [FIRST FINANCE] to make during June 2020 (the 'June 2020 Emails'), in which [FIRST FINANCE] assured MCDP had been made, but by the email from Poignant to Carbonara dated June 2, 2020, advised that: 'We have a complain [sic] that you illegally took this money from a reserve account who doest [sic] belong to you

**CIVIL NO. 21-1534 (JAG)**                                                                                          8

statements and allegations that other clients have made similar claims, Plaintiffs have not put forth sufficient factual allegations to plausibly establish that Poignant was lying about the proffered reasons for the account freeze or that the intent of the freeze was to deprive MCDP of its property. The allegations fail to sufficiently allege a racketeering activity, show a threat of criminal activity, or demonstrate that the acts extend beyond an isolated incident.[4] *Boldt*, 274 F.3d at 42.

The remainder of the claims against Defendant Poignant peppered throughout the Complaint are conclusory allegations and threadbare recitals that merely state that he has engaged in a "fraudulent empire," "a pattern of racketeering activity," and conspired with co-Defendants.[5] *See, e.g.*, Docket No. 1 at ¶¶ 112, 124-125, 128, 130, 132, 158, 187. This falls woefully short

---

> and that you requested to be transferred to a personal account, and a request to have this money frozen, which we did in order to do an investigation. We will be more than happy to escalade [sic] this to know to who [sic] belong [sic] this money and then to give it to the right owner.' [FIRST FINANCE] had no right to freeze MCDP's [FIRST FINANCE] Account, but it did so, freezing the entirety of MCDPs [FIRST FINANCE] Deposit (the 'Frozen Funds'). Discovery will demonstrate that it was BHHI and defendants Poignant, Haik, Berger, and Wagner, and Paniagua-Mora, who caused [FIRST FINANCE] to freeze the account based on representations that Poignant, [FIRST FINANCE], Haik, Berger, Wagner, and Paniagua Mora knew were false.

Docket No. 18 at 13-14

[4] Plaintiffs appear to acknowledge that the Complaint may be deficient by stating in its opposition to the Motion to Dismiss that "[i]f this Honorable Court wants more information about the predicate acts, Plaintiffs can elaborate in an Amended Complaint." Docket No. 36 at 7.

[5] The alleged *modus operandi* is most succinctly outlined in Plaintiffs' RICO Case Statement:

> Defendant Poignant, through defendant [FIRST FINANCE] and in conspiracy with the other defendants, concealed his betrayal of Plaintiffs upon his encouragement of Plaintiff MCDP to make a deposit in [FIRST FINANCE] of more than $625,000 when the true purpose of Poignant and [FIRST FINANCE] was to interdict the flow of cash in and out of MCDP's account at FFBI opened with the deposit of MCDP's [FIRST FINANCE] Deposit, at the behest and with the assistance of B High House PTE LTD ("BHHI"), when Poignant and [FIRST FINANCE] had every intention of holding MCDP's [FIRST FINANCE] Deposit in order to damage Plaintiffs' business and property and reputation, ultimately, put MCDP out of business. Defendants Poignant and [FIRST FINANCE] worked

**CIVIL NO. 21-1534 (JAG)**                                                                 9

of the heightened pleading standard required under RICO. The scarcity of factual allegations as to Defendant Poignant is fatal to Plaintiffs' claims. For a RICO complaint to survive the motion to dismiss stage, there must be more than conclusory allegations—there must be meat on the bones. Here, the allegations are as thin as broth, and the Court is left starved for facts as to Defendant Poignant's alleged unlawful conduct. Notwithstanding, Plaintiffs correctly reference—but do not move for—their right to file an amended complaint. Docket No. 36 at 9. As such, Defendant Poignant's Motion to Dismiss is **GRANTED.** Plaintiffs may request leave to amend the Complaint under Fed. R. Civ. P. 15(a)(2).

### CONCLUSION

For the aforementioned reasons, Defendant Poignant's Motion to Dismiss is hereby **GRANTED**. The claims against Defendant Poignant are hereby **DISMISSED WITHOUT PREJUDICE**. Partial Judgment shall be entered accordingly. Plaintiffs may request leave to amend the Complaint on or before **April 10, 2023**.

---

closely with BHHI and defendants Udi Haik ("Haik"), Daniel Berger ("Berger"), and Dalton Wagner ("Wagner"), and through Sergey Vladimirovich Slastikhin's ("Slastikhin") and Poignant's and his companies, denominated in the Complaint as the "Paytoo Companies," through the enterprises described in the Complaint, to conceal the betrayal of the extraordinary trust placed in defendants Poignant and [FIRST FINANCE] by the Plaintiffs, and the defendants' and Slastikhin's Other Victims, in multiple ways over many years while pursuing a long-term racketeering scheme designed to cheat and defraud Plaintiffs and their Other Victims out of their property and their businesses and to wrongfully convert the businesses and property of their Other Victims to the benefit of the defendants, in particular, defendants Poignant, [FIRST FINANCE], BHHI, and Wagner.

Docket No. 18 at 4-5.

**CIVIL NO.** 21-1534 (JAG) 10

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Monday, March 27, 2023.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge
